DECISION AND JUDGMENT ENTRY
{¶ 1} Richard Linville appeals the Ross County Common Pleas Court's order overruling his constitutional challenge to his reclassification as a Tier III Sex Offender under R.C. 2950, as amended by Senate Bill 10 ("S.B. 10"). On appeal, Linville first contends that the trial court violated his constitutional right to counsel when it denied his motion for the appointment of counsel in the underlying proceedings in the trial court. Because Linville's classification as a Tier III sex offender is civil and remedial in nature, and because he is not being deprived of a liberty interest, we disagree. Next, Linville contends that S.B. 10 violates the Ex Post Facto Clause of the United States Constitution and the prohibition against retroactive laws contained in the Ohio Constitution. Because R.C. Chapter 2950 remains civil and remedial in nature, and not *Page 2 
punitive in nature, we disagree. Linville next contends that S.B. 10 violates the separation of powers doctrine. Because S.B. 10 does not interfere with the power of the judiciary, we disagree. Linville next contends that his reclassification constitutes multiple punishments in violation of the Double Jeopardy Clause of the United States and Ohio Constitutions. Because S.B. 10 remains civil in nature, we disagree. Finally, Linville contends that the residency restrictions contained in S.B. 10 violate his right to Due Process of law. Because Linville has no standing to challenge the constitutionality of the residency restriction, we do not address this argument. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Linville was convicted of ten counts of rape and ten counts of sexual battery in Jackson County, Ohio in May 1995. In 2006, Linville was classified as a habitual sex offender under the sex offender law in effect at that time. In late 2007, while incarcerated at the Chillicothe Correctional Institution in Chillicothe, Ross County, Ohio, Linville received a letter from the Ohio Attorney General informing him that he had been reclassified as a Tier III sex offender under the newly enacted S.B. 10.
 {¶ 3} In January 2008, Linville filed a petition in Ross County to contest his reclassification as a Tier III sex offender, pursuant to R.C. 2905.031(E). Linville requested that an attorney be appointed to represent him during the reclassification hearing and moved for immediate relief from the community notification requirement set forth in S.B. 10. The trial court denied Linville's request for counsel. Following a hearing in which neither Linville nor the state presented any evidence, the trial court *Page 3 
overruled Linville's constitutional challenges to S.B. 10 and found that "none of the factors set forth in Section 2950.11(E)(2) * * * excepting the defendant from the community notification requirements of Section 2950.11" applied.
 {¶ 4} Linville appeals and asserts the following six assignments of error: (1) "The trial court violated Mr. Linville's constitutional rights by denying his motion for appointment of counsel"; (2) "The reclassification of Mr. Linville constitutes a violation of the Separation of Powers' Doctrine"; (3) "The retroactive application of SB 10 violates the prohibition on ex post facto laws"; (4) "The application of SB 10 to Mr. Linville violates the prohibition on retroactive laws"; (5) "The reclassification of Mr. Linville constitutes impermissible multiple punishment under the Double Jeopardy Clause"; and (6) "The residency restrictions of SB 10 violate Due Process."
 II. {¶ 5} Linville does not dispute the facts as applied to these constitutional provisions and S.B. 10. Instead, Linville argues that S.B. 10 violates various constitutional provisions. He further argues that we should interpret S.B. 10 as criminal, instead of civil, or at least that S.B. deprives him of a liberty interest, so that he has a right to an attorney. His arguments involve the interpretation of these constitutional provisions as they relate to S.B. 10. Hence, his arguments are all legal questions that we review de novo. See, e.g.,State v. Downing, Franklin App. No. 08AP-48, 2008-Ohio-4463, ¶ 6, citingStuller v. Price, Franklin App. No. 03AP-30, 2003-Ohio-6826, ¶ 14;State v. Green, Lawrence App. No. 07CA33, 2008-Ohio-2284, ¶ 7.
 {¶ 6} Statutes enacted in Ohio are "presumed to be constitutional."State v. *Page 4 Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 12, citing State ex rel.Jackman v. Cuyahoga Cty. Court of Common Pleas (1967), 9 Ohio St.2d 159. This presumption remains until one challenging a statute's constitutionality shows, "beyond reasonable doubt, that the statute is unconstitutional." Id., citing Roosevelt Properties Co. v. Kinney
(1984), 12 Ohio St.3d 7.
 III {¶ 7} We will first address, out of order, Linville's third and fourth assignments of error. In these assignments of error, Linville argues that S.B. 10's retroactive application is an ex post facto law, which then is in violation of the United States Constitution, and a violation of the Ohio Constitution's prohibition against retroactive laws.
 {¶ 8} "The general assembly shall have no power to pass retroactive laws * * *." Section 28, Article I of the Ohio Constitution. A retroactive statute is "unconstitutional if it retroactively impairs vested substantive rights, but not if it is merely remedial in nature."Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 7, citing State v.Consilio, 114 Ohio St.3d 295, 2007-Ohio-4163. As noted by the Supreme Court of Ohio, "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment."Ferguson at ¶ 39.
 {¶ 9} In determining whether a statute is unconstitutionally retroactive, courts must "first determine whether the General Assembly expressly made the statute retrospective[,]" and if so, courts must then determine "whether the statute restricts a substantive right or is remedial." Id. at ¶ 13. (Citations omitted.) In considering the first *Page 5 
prong, we note that "[statutes are presumed to apply only prospectively unless the General Assembly specifically indicates that a statute applies retrospectively." Id. at ¶ 16, citing R.C. 1.48; Doe v.Archdiocese of Cincinnati, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 40. Typically, a statute must clearly state that it applies retroactively. Id.
 {¶ 10} Here, the legislature intended to apply the tier classification set forth in S.B. 10 retroactively. State v. Graves, Ross App. No. 07CA3004, 2008-Ohio-5763, ¶¶ 9-10; see, also State v. Byers, Columbiana App. No. 07CA39, 2008-Ohio-5051, ¶¶ 59-63 (concluding that "Senate Bill 10's tier classification system was intended to apply retroactively to all offenders[,]" but such conclusion "is not a determination that all of Senate Bill 10 applies retroactively, rather, it is only an opinion that the tier classification system is intended to apply retroactively"). As a result, we move to the second prong of the analysis.
 {¶ 11} Next, we must determine if S.B. 10 "impairs vested substantive rights" or whether it is "merely remedial in nature[.]"Ferguson at ¶ 27. Despite the fact that the Supreme Court of Ohio has recently "been more divided in [their] conclusions about whether the statute has evolved from a remedial one into a punitive one," the Supreme Court of Ohio has continued to find "that R.C. Chapter 2950 is a remedial statute." Id. at ¶¶ 29-30. Based upon the reasoning inFerguson, which concludes that R.C. Chapter 2950, as amended by S.B. 5, remains civil in nature, and not punitive in nature, we conclude that the S.B. 10 version of R.C. Chapter 2905 also remains civil in nature. This court has already reached such a conclusion. See Graves, supra;State v. Longpre, Ross App. No. 08CA3017, 2008-Ohio-3832, ¶ 15. We find no reason to *Page 6 
reassess our determinations in Graves or Longpre at this time. Consequently, we find that Linville has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson, supra, at ¶ 12, citingRoosevelt Properties Co., supra.
 {¶ 12} Accordingly, we overrule Linville's third and fourth assignments of error.
 IV. {¶ 13} In his first assignment of error, Linville contends that the trial court violated his right to counsel when it denied his motion for appointed counsel in the R.C. 2950.031(E) proceedings below. Linville asserts a number of arguments in support of his alleged right to appointed counsel, namely: (1) that S.B. 10 imposes criminal punishment; (2) that S.B. 10 deprives him of a substantial liberty interest triggering a substantive due process right to counsel; and (3) that he possesses a right to counsel under the Fourteenth Amendment to the U.S. Constitution.
 {¶ 14} While R.C. 2950.031 (E) gives Linville the right to a hearing to contest the application of S.B. 10 to him, "the legislation does not authorize the appointment of counsel." State v. King, Miami App. No. 08-CA02, 2008-Ohio-2594, ¶ 4, fn1. Linville maintains that he possesses a right to appointed counsel because SB 10 imposes criminal punishment, as opposed to a mere civil regulatory scheme. As set forth above, we disagree and conclude that SB 10 remains civil in nature. "[L]itigants have no generalized right to appointed counsel in civil actions."Graham v. City of Findlay Police Dept., Hancock App. No. 5-01-32, 2002-Ohio-1215, citing State ex rel. Jenkins v. Stern (1987),33 Ohio St.3d 108; Roth v. Roth (1989), 65 Ohio App.3d 768. As a result, Linville has no right to appointed counsel in this civil matter. *Page 7 
 {¶ 15} Linville, however, contends that he is entitled to appointed counsel in this action because he has been deprived of a substantial liberty interest in his prior classification. In support of his contention, Linville cites the Alaska Supreme Court case of Doe v.State, Dept. Of Public Safety (2004), 92 P.3d 398. Ohio courts, however, have distinguished Doe because it was decided "strictly on an interpretation of the Alaska Constitution" and because the conviction inDoe was set aside by a court before imposition of the registration requirements. King at ¶ 33.
 {¶ 16} Further, Linville had no liberty interest in his previous classification. In Ohio, "[e]xcept with regard to constitutional protections against ex post facto laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." State v. Cook (1998), 83 Ohio St.3d 404, 412, citing State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279, 281-282. As a result, convicted sex offenders "have no reasonable expectation that [their] criminal conduct would not be subject to future versions of R.C. Chapter 2950." King at ¶ 33. Based on Cook, courts conclude that "convicted sex offenders have no reasonable `settled expectations' or vested rights concerning the registration obligations imposed on them." Id. Thus, because Linville has no settled expectation regarding his registration obligations, he has not been deprived of any liberty interest. Id.
 {¶ 17} Therefore, we find that Linville has no right to appointed counsel in his R.C. 2950.031(E) proceeding.
 {¶ 18} Accordingly, we overrule Linville's first assignment of error.
 V. *Page 8 {¶ 19} In his second assignment of error, Linville argues that his reclassification as a Tier III sex offender under S.B. 10 violates the separation of powers. Linville asserts that S.B. 10 requires the executive branch to overrule final judgments entered by trial courts, i.e., an offender's previous classification as determined by a court. Linville also contends that S.B. 10 interferes with a judiciary function, i.e., a court's power to sentence an offender.
 {¶ 20} Initially, it must be noted that a statute violating "the doctrine of separation of powers is unconstitutional." State ex rel.Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 475,1999-Ohio-123. "The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." State v. Thompson, 92 Ohio St.3d 584, 586, 2001-Ohio-1288, citing Zanesville v. Zanesville Tel. Telegraph Co. (1900),63 Ohio St. 442. The doctrine's purpose "is to create a system of checks and balances so that each branch maintains its integrity and independence." Id., citing State v. Hochhausler (1996), 76 Ohio St.3d 455; S. Euclid v.Jemison (1986), 28 Ohio St.3d 157.
 {¶ 21} Pursuant to the Ohio Constitution, "the General Assembly is vested with the power to make laws." Id., citing Section 1, Article II, Ohio Constitution. The Ohio General Assembly is prohibited "from exercising `any judicial power, not herein expressly conferred.'" Id., citing Section 32, Article II, Ohio Constitution. Courts, on the other hand, "possess all powers necessary to secure and safeguard the free and *Page 9 
untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." Id. (Citations omitted.)
 {¶ 22} Linville first contends that S.B. 10 legislatively requires the Attorney General, an executive official, to vacate an existing court judgment regarding his sex offender classification that was judicially determined in his underlying case. Ohio courts have rejected such a contention and concluded that S.B. 10 does not violate the doctrine of separation of powers by abrogating final court judgments. In reSmith, Allen App. No. 1-07-58, 2008-Ohio-3234; Byers, supra; Slagle v.State, 145 Ohio Misc.2d 98, 2008-Ohio-593. One Ohio court noted, "[t]he classification of sex offenders into categories has always been a legislative mandate, not an inherent power of the courts" and "[w]ithout the legislature's creation of sex offender classifications, no such classification would be warranted." In re Smith at ¶ 39, citingSlagle. Thus, sex offender classification is nothing more "than a creation of the legislature, and therefore, the power to classify is properly expanded or limited by the legislature." Id.
 {¶ 23} Another Ohio court similarly determined that S.B. 10 "is not an encroachment on the power of the judicial branch of Ohio's government."Slagle at ¶ 21. In Slagle, the court concluded that S.B. 10 does not abrogate "final judicial decisions without amending the underlying applicable law" or "order the courts to reopen a final judgment." Id. Instead, S.B. 10 "changes the different sexual offender classifications and time spans for registration requirements, among other things, and [requires] that the new procedures be applied to offenders currently registering under the old law or offenders currently incarcerated for committing a sexually oriented offense." Id. *Page 10 
 {¶ 24} Here, we agree with the foregoing conclusions finding that S.B. 10 does not abrogate final judicial determinations. Linville's sex offender classification is nothing more than a collateral consequence arising from his criminal conduct. See Ferguson at ¶ 34. Further, as set forth above, Linville has no reasonable expectation that his "criminal conduct would not be subject to future versions of R.C. Chapter 2950."King at ¶ 33. Thus, it cannot be said that S.B. 10 abrogates a final judicial determination in violation of the doctrine of separation of powers.
 {¶ 25} Next, Linville contends that S.B. 10 violates the doctrine of separation of powers because it interferes with the judiciary's power to sentence a sex offender. As set forth above, S.B. 10 is not criminal or punitive in nature. Ferguson at ¶ 32; Graves, supra; Longpre, supra. Because S.B. 10 is civil and remedial in nature, it does not interfere with a court's power to impose a sentence. See State v. Swank, Lake App. No. 2008-L-019, 2008-Ohio-6059, ¶ 99.
 {¶ 26} Therefore, we find that Linville has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional. Ferguson at ¶ 12.
 {¶ 27} Accordingly, Linville's second assignment of error is overruled.
 VI. {¶ 28} In his fifth assignment of error, Linville contends that his reclassification as a Tier III sex offender constitutes multiple punishment in violation of the double jeopardy clauses of the United States and Ohio Constitutions.
 {¶ 29} "The Double Jeopardy Clause states that no person shall `be subject for the same offence to be twice put in jeopardy of life or limb.'" State v. Williams, *Page 11 88 Ohio St.3d 513, 527-528, 2000-Ohio-428, citing Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. The double jeopardy clauses in the United State and Ohio Constitutions prevent states "from punishing twice, or from attempting a second time to criminally punish for the same offense." Id., at 528, citing Kansas v. Hendricks, 521 U.S. 346; Witte v. United States (1995),515 U.S. 389. As a result, "[t]he threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment." Id., citing Hudson v. United States
(1997), 522 U.S. 93.
 {¶ 30} As set forth in our analysis above, R.C. Chapter 2950 remains civil and remedial in nature, and not punitive, following the enactment of S.B. 10. Thus, Linville's contention in this regard is without merit. See Ferguson, supra; Williams, supra; Graves, supra. Consequently, we find that Linville has not shown beyond a reasonable doubt that S.B. 10 is unconstitutional in this regard. Ferguson at ¶ 12
 {¶ 31} Accordingly, we overrule Linville's fifth assignment of error.
 VII. {¶ 32} In his sixth assignment of error, Linville argues that the residency restrictions set forth in S.B. 10 violate his right to due process. Linville contends that such restrictions "not only operate as a direct restraint on Mr. Linville's liberty, but they infringe upon Mr. Linville's fundamental right to live where he wishes, as well as his right to privacy." Linville fails to show that he has standing to assert this argument by showing present harm, or that the argument is ripe for review.
 {¶ 33} R.C. 2950.034(A), as amended by S.B. 10, provides that "[n]o person who *Page 12 
has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises or preschool or child day-care center premises." The Supreme Court of Ohio holds that this provision "was not expressly made retrospective," and thus, "does not apply to an offender who bought his home and committed his offense before the effective date of the statute." Hyle at syllabus.
 {¶ 34} Here, however, there is no evidence that Linville owns a home at all, or, if he does, whether it falls within 1,000 feet of a school, preschool or day-care center. Instead, the only information in the record regarding Linville's current residence is that he is incarcerated by the state of Ohio.
 {¶ 35} Ohio courts hold that, where the offender does not presently claim to reside "within 1,000 feet of a school, or that he was forced to move from an area because of his proximity to a school[,]" the offender "lacks standing to challenge the constitutionality" of the residency restrictions. State v. Peak, Cuyahoga App. No. 90255, 2008-Ohio-3448, ¶¶ 8-9; see, also, State v. Pierce, Cuyahoga App. No. 88470,2007-Ohio-3665, ¶ 33; State v. Amos, Cuyahoga App. No. 89855,2008-Ohio-1834; Coston v. Petro (S.D. Ohio 2005), 398 F.Supp.2d 878,882-883. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision.'" Pierce at ¶ 33, citing State v. Brown, Cuyahoga App. No. 86577, 2006-Ohio-4584, quoting *Page 13 Palazzi v. Estate of Gardner (1987), 32 Ohio St.3d 169, syllabus.
 {¶ 36} Further, where an offender "is currently in prison," that offender is not presently subject to the residency restrictions, resulting in no present harm being inflicted on the offender. State v.Freer, Cuyahoga App. No. 89392, 2008-Ohio-1257, ¶¶ 29-30. In such instances, Ohio courts have dismissed due process challenges to the residency restrictions on the grounds that such issue was not ripe for review. Id. at ¶ 30.
 {¶ 37} Therefore, we find that Linville has failed to show standing to challenge the constitutionality of the residency restriction contained in R.C. 2950.034, or that the claim is ripe for review.
 {¶ 38} Accordingly, we overrule Linville's sixth assignment of error.
 IX. {¶ 39} Having overruled all six of Linville's assignments of error, we affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
 Harsha, J. and Abele, J.: Concur in Judgment and Opinion. *Page 1